We'll call the first matter for oral argument this morning, United States of America v. Castillo. Mr. D'Aruzzo? Good morning, Your Honors. Joseph D'Aruzzo, together with Co-Counsel Daniel Lader, on behalf of Tomas Liriano-Castillo, I'd like to reserve five minutes for rebuttal. Since the creation of the Department of Justice in 1870, this is the first and only time that a non-presidentially appointed Senate-confirmed individual has been at the helm of the ship of the Department of Justice. President Trump's installation of Whitaker as the acting AG violated the excellent statutory scheme in place and also violated the Appointments Clause. All right, let's stop right there and begin with the several statutes as well as perhaps the Appointments Clause and how, if at all, they interact here. As I understand it, you're contending that the APSA lays out the exclusive manner by which the position of Attorney General should be filled. Is that correct? That is correct. And that it controls over the more general mechanisms laid out in the FVRA. That is correct. Doesn't the language of Section 508A suggest that it is permissive, that if the Attorney General's office is vacant, the Deputy Attorney General may exercise all the duties of that office? That's 508A. And I understand why one would have that reading. However, and I would have to turn the Court's attention to the law review article by Mr. Stephen Miglia, who did a wonderful job. Actually, this law review article I would characterize as a tour de force of delving into the statutory history. But to answer your question directly, Judge Smith. I'm not denigrating law review articles generally or this one in particular, but we're dealing with statutes here, two statutes with specific language. And I've asked you a question that goes to the language. In fact, I'm not asking anything about legislative history. No, no. It goes to my answer is this. The 1870 statute that created the DOJ, the 1950 statute that revised the DOJ, the 1953 statute that further revised the DOJ, and the codification in 1966. It is in the codification of 1966 that moved the, what was the provisions in Title V into Title 28 and specifically into 508A and B. And the, looking at the actual source law, it appears that the codifiers, for stylistic reasons, inserted the word may, but the source law uses an obligatory shall. I'm struggling with why any of this matters. The United States Attorney, who apparently appointed by the Senate earlier this term, supervised by the Deputy AG, who at the time was Senatorially-confirmed President, I'm here to report on this report. I have a judge who was newly appointed. I'm just, I have a bit of a question. What would be Mr. Whitaker's appointment? Well, Judge Schor, I would put it like this. As Whitaker has held the ship of the Department of Justice, his actions necessarily touch everything that the Department did. But the Department didn't do anything here. It was a judge independently. Are you contending that the judge who imposed the sentence was not properly authorized to impose the sentence? No. This first decision that was recently issued in IALA, that I personally litigated, laid to rest any type of argument that Judge Gomez did it, you know, his appointment or continued appointment was under 1614, was problematic. Okay. So how is a sentence, how is the sentence invalid? The sentence is invalid because the, the It was imposed by a district court judge, correct? Yes, it was imposed by a district court judge. Okay. But the prosecution at the time, when, when I was before Judge Gomez and the U.S., the assistant U.S. attorney who was in court at the time was litigating and advocating on behalf of the government, it is that portion of the proceedings that's problematic. Well, you're saying the sentence, but the sentence was imposed by a judge. What, what authority do you have for the proposition that if there is some questionable authority with respect to the prosecution, that the sentence imposed by a properly authorized Article III judge is somehow invalid? Well, to be clear, not that it makes a difference for your question, but he is an Article IV judge. Okay. Article IV. But I would submit that this is a, a, a sui generis case because it has never happened before that the head of the Department of Justice has been a non-PAS officer. Okay. But even sui generis, what's, what's your analysis? How do you, how do we get there that somehow the prosecution's, you know, the, the authority of the prosecution can somehow render a sentence invalid? Particularly in a case, let me just, if I can, if my judge friend doesn't mind me writing on this, in a case where in the timing of it, everything that the prosecution had to do was done, right? There was nothing that, if I've got the timing right here, this was before Judge Gomez wore sentencing. After the prosecution had taken place, the conviction had taken place, the sentencing had taken place and was back for resentencing. Is that right? Correct. Okay. So this, the prosecution at that point was doing nothing. This was just in front of a judge, right? When, when Mr. Whitaker assumed the office, which you find so problematic, nobody in the DOJ, not even the U.S. Attorney's Office here, was doing anything meaningful. It was all in the hands of the court, was it not? I understand where you're coming from, Judge Jordan, and I, my answer is a resentencing, even if it may be perfunctory, still is an integral part of a criminal case. And one cannot say, say that in the context of resentencing, that when you have a problem, we can sweep it under the rug and it's not a big deal. How did, how did the resentencing differ from the resentencing? It didn't. The sentence opposed was exactly the same, 121 months. So, I mean, if we're looking for any kind of prejudice or really cause and effect of something, where is it? I would submit, Your Honors, that in this context, the prejudice has to be reviewed under structural error analysis. I can't prove prejudice, and I fully admit that. The sentence before was the sentence after, 121 months, 121 months. I can't say that the Assistant U.S. Attorney, Ms. Sprotty, did anything improper or anything untoward. I can't advance those arguments because they didn't happen. But I would submit that a structural analysis is needed just for that reason. That's the point. Structural errors, errors that result in something that's fundamentally unfair. Isn't that the nature of structural error? In part, but not necessarily. I would submit that appointments clause issues, which are structural in nature, don't necessarily mean that anything was unfair. The Lucia case, the ALJ that was helped to be improperly appointed for some of the appointments clause, there was no allegation that the ALJ did anything untoward. Did you, what the Supreme Court said, it never, and since what you're calling really is automatic reversal, the Supreme Court said, with respect to automatic reversal, that it's limited to cases where a defendant has been deprived of some basic protection. Quote, without which, no criminal punishment may be regarded as fundamentally unfair. I would submit, Judge Smith, that an appointments clause violation, which goes to the basis of separation of powers, and there's a bedrock constitutional fundamental precept that we have in the United States. That's the point. Separation of powers. That's the error, and that's what needs to be vindicated. But that's the point, separation of powers. Your DOJ is in the executive branch, and we're talking about a sentence imposed by a judge in the judicial branch. But advocated by, and litigated by the Department of Justice. Well, that's actually, on the facts here, that's, you know, even if it weren't the case that everything had been done, you'd be hearing much the same questions, I think, Mr. DeRusso. But it's a particularly tough argument for you to be making, because when you say advocated here, there was nothing advocated at the time when a court had took office. All the advocating had been done. It was over. The advocating was done. It was just in the judge's court, and the judge rendered sentence. I mean, I could be wrong about the timing here, but I don't think so. So how is it that under these facts, where the advocating had been completed, and all that needed to be done was a judge to pronounce sentence, how can you get this sort of time machine argument that would a curse appointment, assume it was wrong, go back in time, it doesn't just infect what he did going forward. It infects everything that happened before it, too. How does that work? Logically, how does that work? Judge, I would propose it like this. Under your scenario, and I understand where you're coming from, but under your scenario, even if we took the prosecutor totally out of the situation, the AUSA didn't show up to court that day. It just wasn't there. I would submit, just like a case can't go forward without an AUSA in the courtroom for purposes of resentencing, this case couldn't go forward with an AUSA that was directed by a person who lacked the authority, statutory and constitutional, to man the ship of the DOJ. So assume that the resentencing had occurred in the sense that everybody showed up in court, and it was pre-Whitaker appointment, and the judge said, I'm going to reserve the sentence and I will pronounce it later. And then two days later, the judge issued some order. But Whitaker's appointed in the meantime. I mean, would your argument be different, or would you still be saying, no, no, it infects everything? I would say no, no. And the reason is because it doesn't matter whether the AUSA is in the courtroom or not. Your argument is it just flat out doesn't matter how far removed this is, how far removed this is from the Department of Justice. It is that Whitaker's existence in that office taints everything, right? For your example, I would say not exactly. Because for purposes of resentencing, two days later, if the argument was held on November 1st, and let's say on November 10th, the judge pronounced sentence, I get to go before the judge, the judge gets the pronounced sentence, I get to object, I can't remember the name of the decision of this court, but raising objections at the time, effectively making a sentence, I get to do something at that resentencing when it's actually pronounced. And the government gets to chime in and advocate their views. So it's not just a rubber stamp. It taints everything. And not just this case. Your theory is everything that happened across the United States of America is null and void through the Department of Justice because of Whitaker's existence in that office, right? Not exactly, Judge. How can it not be? I would submit this. There are very few criminal defendants that have advanced this position. And as a result, you've waived it. So I understand that the court would not want to open up the Pandora's box. Well, then it's waived here.  It's also waived here because it would be plain error is what you're saying. This was never raised. So isn't it waived here? No, Judge, because it hit the news waves on the 8th. I was in court the morning of the 8th. As soon as I found out about this, I did my research. I kind of just filed some motion willy-nilly. I did my research and had to write the motion and got it in as fast as humanly possible. You might have got it in as fast as humanly possible, but you didn't get it in at the time of sentencing. I mean, yeah, you don't get to say I was as quick as I could be. You've got to do it at the time. That's what forfeiture is about. And it didn't happen. Well, I would submit. I didn't waive it because a waiver has to be known, intelligent, and voluntary. Forfeiture. Even forfeiture. How? It hit the news waves on the 8th. I was in court. But it had happened. It doesn't matter about forfeiture. This isn't a moral fault thing. I'm very able and an active advocate. But the fact is forfeiture is you don't make the argument at the time when the court can do something about it. That didn't happen here. So the very point you just made is, hey, don't worry. You're not opening a Pandora's box. There's going to be lots of forfeitures. That hits home for you. Why doesn't it hit home for you? I would submit to Judge Jordan that in the context of forfeiture, you have to be given somewhat of a reasonable amount of time in order to do what needs to be done. Taking your position to the logical extension, if I walked into this courtroom today and something hit the airwaves that I didn't know about because I'm not glued to my iPhone, and I came in here and it had already happened, I would have forfeited it? That can't be right. Indeed. No, that is right because this is a protection not for you. It's a protection for the court. The point is we don't sandbag the courts intentionally or otherwise. You've got to raise things in court in a timely fashion so that if it's raised, the judge has an opportunity to deal with it. The district court judge here had no opportunity to deal with it because he raised it days later after a sentence was pronounced. That's kind of a textbook example of a forfeiture. And it's not necessarily a forfeiture. It's a plain error review because we're not going to say that the court abused his discretion because it wasn't presented. So it has to be based on plain error review. So it's not necessarily waived. It just has to be something that's so fundamental. Well, that assumes that I didn't raise it in a timely manner. I would say under these facts, given that I walked into the courthouse on the morning of the 8th when this information was just becoming public, that I couldn't, you know, forfeiture to me implies that you have done something wrong or untoward or you dropped the ball in some way. I don't think that my actions on the 8th, when I didn't know about this, was in any way untoward or I dropped the ball. But maybe the way we should approach it is not by saying waiver or forfeiture, but just it's going to be plain error review because, as Judge Jordan said, it's really a protection of the court, that we're not going to sandbag the court and say, oh, well, you abused your discretion, to which the judge says, wait a minute, this was never before me. So it's just plain error review. How is it plain error? Well, even if we're looking at an abuse of discretion, I would submit that the underlying, you know, issues here, they're all legal. And abuse of discretion can be an error of law. And the legal issues that are here, and these are important legal issues, these important legal issues need to be addressed. And I think this Court can and should do that. I don't think that any other attorney in my shoes would have done any better of a job. But if we rule in your favor here, would it not send shockwaves throughout the country    I don't think it would. that's been imposed while Whitaker was acting? Because it's all going to be plain error review just like yours. I would submit this, Judge Rendell. The Supreme Court's decision, I want to say it was Justice Scalia talking about INS v. Chadha, made it clear that constitutional issues, in particular the appointments clause, this is a matter of constitutional design. And that when the executive goes and does something unheard of since 1870, there should be consequences. And actions have consequences. And to give the executive a free pass and ignore what happened, and ignore the appointments clause, and ignore the excellent statutory scheme, I submit is improper. Do either of my colleagues have other questions at this juncture before we have to go back? No. Nothing further. We'll have you back. Please. May it please the Court, William Foster for the United States. The President's decision. Yes. I'm not entirely sure where to start, other than to simply ask you generally to respond to the statutory arguments made, as well as the argument made concerning the appointments clause. Sure. So just to frame it briefly, I think it is important to look at this through the lens of plain error review. So addressing specifically the statutory question, if this Court is to just review for plain error, the Court doesn't necessarily need to resolve the ins and outs of how to interpret the statute, because Mr. DeRuzo can't show plain error here on behalf of his client. All the district courts that have reached the question have concluded that the appointment was valid, both statutorily and constitutionally. And he can't point to any cases that have gone in his favor. So I think that is probably enough on plain error review for this Court to conclude that it doesn't need to reach all the ins and outs of the statute. The Eaton case from the U.S. Supreme Court in 1898 makes the appointments clause question fairly simple. But I'm happy to delve into those ins and outs if the Court would like me to. Maybe you could meet the forfeiture argument, not the one posed to him, but the one he posed to you, which is you don't even get to make this argument because the government had it shot and failed. They didn't make a speech about this until Maine Justice came in with a supplemental brief. Your Honor, it is correct. As it relates to the standard of review, we failed to raise plain error in our responsive brief. Fourteen days later, we filed a supplemental brief. This Court allowed us to file that. And I think that the law is clear, particularly from other circuits, but I think also within this circuit, that the government doesn't waive the standard of review. The government is a discretionary doctrine for this Court to conclude. This Court can conclude that the government waives it, but it's the discretionary failing to brief sort of waiver. So the question is, it is discretionary. Why should we not hold the government to that standard of showing up? I mean, Mr. DeRuzzo can get up and say, hey, I acted as quickly as they could. What's the information that came to my attention? The government has known about its arguments, according to you, since 1898. So what's the excuse for not raising the argument? Your Honor, we don't have an excuse. We should have raised it in our responsive brief. But when we became aware of this at Main Justice, it was our desire to get the best arguments before the Court. And so we, as quickly as we could, again, I recognize that that sounds very similar to Mr. DeRuzzo's argument.  I think if you look at the cases that deal with the waiver doctrine, even when appellants fail to brief something, even that is discretionary. But here, particularly as appellees, we don't waive the standard of review by failing to brief it. Now, if I may speak briefly about his corporature, he asserts that he acted as quickly as he could and then it just hadn't made it across the airwaves that the acting Attorney General had been appointed until November 8th, the day that his client was sentenced. But in fact, it was around noon on November 7th that the President first said over Twitter that he was going to be designating the- And that's pretty official, right? Your Honor, all I can say is that it was something that senators were already making statements about this, public statements about this, on November 7th. One of the CNN articles that Mr. DeRuzzo cites at page 17 of his opening brief is actually dated November 7th, the day before the sentencing of his client in this case. So I think it's pretty clear that he forfeited it. Now, going back to Judge Jordan's original question, yes, the government should have raised this initially, but we did it within 14 days. And I think most importantly, Mr. DeRuzzo had an opportunity to respond not only on the standard of review, but also on the additional arguments that we raised respecting the validly appointed United States Attorney and Deputy Attorney General. Because he had that opportunity to respond, he can't show that he was prejudiced in any way by our failure to raise it sooner. Why don't you speak to the issue that Judge Rendell was putting in front of Mr. DeRuzzo, which is why does this matter at all since this was a sentencing by a judge that everybody agrees was duly appointed? Your Honor, I don't think it matters at all. If you look at the Supreme Court's cases involving particularly the Appointments Clause, those cases have had to do with an improperly constituted court or adjudicative officer. In the executive branch? That's correct, yes, in the executive branch. But in those cases, for example, Freetag, the Ryder case, those cases dealt with an improperly constituted court or adjudicative officer. This is very different to say that somehow the Assistant United States Attorney was unauthorized to make any arguments before the court and that that somehow vitiates the entire sentencing proceeding. I think it's also important to note that, again, this was on remand for resentencing simply to correct an excessive sentence on one count. There was an illegal entry count, which has a statutory maximum of six months. The district court reimposed the proper sentence on that count but imposed 121 months on the remaining drug trafficking counts. The mandatory minimum based on the jury verdict in this case was 120 months, so there was a one-month difference between the sentence reimposed and the mandatory minimum. To my knowledge, there were no additional sentencing arguments made when it was brought back for resentencing. So particularly if this court is applying plain error review, Mr. DeRuzo can't show prejudice. And I think even on the flip side, the government would be able to show harmlessness, but I think the more appropriate way to view this is not necessarily a harmless error sort of question, but really that part of his statutory and constitutional claim itself requires a showing of prejudice. I would compare it to that. I'm just not understanding why we are trying to engage the argument, and Mr. DeRuzo I'm sure will be speaking to this in rebuttal, but the United States Attorney is senatorially appointed, duly appointed and confirmed, you know, nominated and confirmed. The deputy AG, who according to the Department of Justice's guidelines, as you noted in your supplemental material, is duly appointed. I'm missing the logic here. Where is the logical link? And if there isn't one logical link, why do we have to engage these arguments at all? Your Honor, I don't think there is a logical link, and that's why I don't think that the court needs to I think this can be a very simple opinion to write. And I think the lack of Explain how it would be written, and I'll ask Mr. DeRuzo the same thing when I have the opportunity. Your Honor, I think this court, the easiest way to write this opinion is for the court to conclude that plain error review applies, and that there is no clear or obvious error. I think the second, if the court wants to go beyond the clear or obvious error, then I think the court can conclude very easily that there is no prejudice. And that's again by virtue of, I don't think that there's even an error, not only on the merits, but even for him to show that he is entitled to relief from a resentencing. He needs to show more than just that someone far up the chain in the U.S. Department of Justice was invalidly appointed. He needs to show some connection between that and his case. I think that's part of his substantive merits claim, not just a function of the third prong, the third prejudice prong. So I think the plain error prejudice he certainly can't meet, but even as part of his substantive claim, he can't show that his sentence was somehow officiated because of that improper designation. It's, for example, similar to a prosecutorial misconduct or a claim under Strickland where prejudice is sort of built into the merits inquiry itself. I think that's the proper analysis here. But this court could just say we're applying plain error review. There's no clear or obvious error. He hasn't pointed to a single case that would establish clear or obvious error, and he hasn't shown any clear connection between the designation and his case. Now I'm happy to engage further with the merits of the Vacancies Reform Act, which certainly raises many questions, perhaps more questions than answers. If the court has specific questions. I'll leave that to my colleagues. Well, I do have a question or two about that quickly, if we may, assuming that we thought we needed to engage with that. Since the FVRA, if I've got my acronym right, notes that it's exclusive except where there is an act specific to the presidentially appointed position in question, and there is, in fact, such an act, why isn't Mr. DeRusso correct in advocating for his client that it is that earlier statute, not the FVRA, that controls? Your Honor, the reason is that the language of the Vacancies Reform Act, which says it's exclusive unless exception is met. So the Vacancies Reform Act is not exclusive. But that does not automatically make Section 508 in Title 28 itself exclusive. I think if you were to think of another example, say, for example, that some supplier of products had a contract, that they were going to be the exclusive supplier for someone downstream unless there was some triggering condition. If that condition were triggered, it wouldn't mean that the party downstream could no longer engage in buying products from the upstream supplier. So the exclusive unless doesn't mean that they somehow no longer, the Vacancies Reform Act no longer has any application at all. What it means is that 508 is the place we look at first, certainly, because it kicks in. Well, help me out logically. If that's the case, does the Vacancy Reform Act, if you were thinking of this in terms of a Venn diagram, would 508 as a circle fit entirely within the circle of the Vacancy Reform Act? Is there anything that falls outside the Vacancy Reform Act that you could do under 508 but you can't do under the Vacancy Reform Act? Yes, Your Honor. I think the reason the Venn diagrams are separate is, first of all, Section 508 doesn't have the time limits that are included in Section 3346. So someone who takes office under Section 508 can remain in that office longer than 210 days. Moreover, Section 508 has a more extensive chain that follows it because it allows the Attorney General to designate the Solicitor General and all, I believe, 11 Assistant Attorneys General in specific order. So, yes, it's more detailed, more granular on that side. So I think if you look at it as a Venn diagram, the Vacancies Reform Act primarily vests a lot of authority in the President himself. Section 508 is sort of an automatic succession within a lot of authority vested in the Attorney General. And with respect to the legislative history, for example, the article that they've cited, it's certainly clear that the Vacancies Reform Act was adopted in order to restrict the authority of agency heads within the federal government from designating people downstream. But that's actually what Section 508 deals with. And the Vacancies Reform Act actually gives a lot more power to the President himself. But the two, as the district courts that have considered this have all concluded, the two statutes can both apply and the President can choose between one or the other. I think perhaps the most important statutory clue to that is the fact that Section 508 specifically refers to the Vacancies Reform Act, specifically refers to the Reform Act initially, when it says that the Deputy Attorney General is the first assistant for purposes of the Vacancies Reform Act. So that is enough in itself to show overlap. Understood. And if the Court has no further questions. Any further questions of my colleagues? Nothing more. If not, thank you very much. We'll have Mr. Caruso back on the line. Your Honor, to my esteemed colleagues, last part, the government's instruction of 508 violates the reference candidate. And at the time that 508 was codified in 1966, the provision under the Vacancies Reform Act that Whittaker was appointed did not exist. It's my understanding that the reference candidate states that any cross-references within a particular statute at that time are frozen in time and they do not evolve as the cross-reference statute evolves over time. Yeah. More significantly importantly, though, Mr. Caruso, how, and this goes back, I think, to Judge Rendell's initial question to you. As a matter of logic, how do we get to where you want to get? Other than this general proposition, and maybe there isn't another way, the general proposition that even if the Attorney General, acting Attorney General, has nothing at all to do with any aspect of Castillo's prosecution, his existence taints everything. How do we logically get to where you want to get? How would we write the opinion? I believe that it's a function of 28 U.S.C. 516, which states rather shortly, except as authorized by law, the conduct of litigation in which the United States, an agency or officer thereof, is a party or is interested in securing evidence, therefore, is reserved for officers of the Department of Justice under the direction of the Attorney General. To go with the government's theory that we have a violently appointed U.S. attorney and that's good enough, we take that to its logical conclusion. It doesn't matter if the Attorney General, the DAG, any of the assistants, we can get rid of everyone at Maine Justice, and as long as there is a violently appointed U.S. attorney, that's good enough. Indeed, and wouldn't you be arguing that exact point if there were a different case in front of us? If the U.S. attorney had taken a position in a case that the Maine Justice had not known about, and then Maine Justice came in later and said, hey, we don't want that, I'm pretty sure the argument we'd be hearing from defense counsel would be, the U.S. attorney is an authorized representative of the United States, makes binding obligations on the United States when they make representations. You should stick with that, right? That's a very different analysis. Why is that different? Why is it any different to say that the U.S. attorney validly can bind the United States, but the U.S. attorney can't act in the name of the United States if somewhere up in the high reaches of the DOJ there can be a technical obligation to the appointment of the attorney general? I would submit one is problematic for purposes of representations of an attorney or an AUSA or the U.S. attorney before the court to bind a party. That is a very different analysis as to whether a statutory scheme, specifically 516 and provisions of Title 28, have been violated at all. I would submit that when an attorney comes in and makes a representation for his client, that binds his client. That's a very different analysis. Is every indictment that was brought and issued when Whitaker was the acting attorney general, is every indictment null and void? I would submit that. Because that's a closer case, actually, because then that's an action of the executive, whereas this is not. But the as far as purposes of whether the indictment, whether the grand jury's impedible is valid, I don't think that's an issue. How can it not be an issue? It's an action of the executive branch. By your logic, your answer would have to be yes. Every indictment handed down during that period of time is invalid because Whitaker's existence taints it. Perhaps this is my understanding, because I thought the grand jury was an independent body separate or apart from the executive. But the grand jury also recommends, and they bring an indictment. I mean, definitely the executive branch of the DOJ has a lot to do with an indictment, does it not? More so than to do with a sentence. I believe, but it's my understanding of the indictments I reviewed, it's signed off by the foreperson who represents the district judge. By that, if you say grand jury's independent, well, then I say a district judge is independent. A district judge should be independent. Well, no, but I mean, that guts your argument that a sentence imposed by a district judge necessarily has the taint of the attorney general. If you're saying that the grand jury is independent and therefore doesn't have the taint, I think then that's kind of game, set, match in terms of the sentence. Well, I would disagree, because, again, I've not stated that I've had any problem with Judge Gomez's sentence or Judge Gomez did anything untoward. It's only that the litigation of the United States before Judge Gomez was improper. I thought your argument was that because the U.S. Attorney's Office and the DOJ were effectively advocating, it's the advocating that is a problem. And that's exactly true in the indictment scenario, because the Attorney General's Office, excuse me, the U.S. Attorney's Office, they're the only representative. The government of the United States through the DOJ is the only person interacting with that independent body. Right? There is no defense counsel in the room. I mean, it's an a-for-sure-I case, isn't it? I understand where you're going. Let me apologize. I'm just not familiar with how grand juries work. Honestly, I've never had the opportunity to appear before them or deal with that. So to the extent that I created a footfall, let me apologize. I'm sorry. But as to the forfeiture issue, as to the government's forfeiture, the government argued that I had ability to respond. Well, that same logic applies at the district court level. I filed my motion to vacate, and the government had ability to respond. What's good for the goose is good for the gander, Your Honors. I submit that to the extent that I don't submit, don't believe I committed a forfeiture, but to the extent that perhaps I did, then the government logically would have forfeited the same argument, which leads us back to I think this Court can engage in a merits-based analysis. But as to the interplay of the statutes, I think it's clear based upon the statutory text, the legislative history, the Federal Vacancies Reform Act specifically carves out Section 508. Or 508 was supposed to be carved out. It was actually in the text. It was removed because it was considered to be redundant, and the Congress did not want an argument to be that the 39 other statutes somehow were exempted and that it just only applied to 508. Got you. With that, I ask... Do either of my colleagues have any further questions? No. Thank you, Your Honors. Thank you, Mr. Glasser.